IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'23 JAN 30 PM 3:08
AJ

BRYAN LEE BREWER,

    Petitioner,

v.

E.A. EARWIN,

    Respondent.

Civil Action No.: 22-cv-489-LKG

Dated: January 30, 2023

## MEMORANDUM OPINION

Pending in this matter are Respondent's Motion to Dismiss or for Summary Judgment (ECF No. 7), which is opposed by Brewer. ECF No. 17. Respondent has filed a reply. ECF No. 18. Also pending is Brewer's Motion for Partial Summary Judgment and Expedited Decision (ECF No. 10), which Respondent opposes (ECF No. 12) and Brewer has filed a reply. ECF No. 16.[1] Brewer also filed Motions to Strike Respondent's Reply (ECF No. 21) and for Expedited Ruling and Sealing (ECF No. 23).[2] No hearing is required for the disposition of the matters

---

[1] Brewer replied to Respondent's opposition, raising new claims regarding his being: improperly subjected to a public safety factor of escape; wrongfully designated far from home; housed in a dangerous medium security prison; and asserting the incidents complained of in this case were in retaliation for his claims made in the District Court of Virginia. ECF No. 16 at 2. In his opposition response (ECF No. 17), Brewer raises new claims that the Court should order the Federal Bureau of Prisons (BOP) to apply the maximum amount of First Step Act credits towards his release and remove the Public Safety Factor for Serious Escape. *See* ECF No. 17 at 7. These claims, raised for the first time in a reply to a response to his motion for summary judgment and in his opposition to Respondent's Motion for Summary Judgment are not properly before the Court and will not be considered. *See Calloway v. Moubarek*, No. GLR-20-1953, 2020 WL 7027449 *n.6 (D. Md. Nov. 30, 2020); *sell also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748, n. 4 (D. Md. 1997).

[2] Brewer filed a Motion for Partial Summary Judgment and Expedited Ruling (ECF No. 10), which counsel construed as an opposition response and to which Respondent filed a Reply. ECF No. 12. Thereafter, Brewer filed his actual Opposition Response to the dispositive Motion (ECF No. 16) and Respondent filed its Reply (ECF No. 18), which Brewer now moves to Strike (ECF No. 21) as an unauthorized second reply. Brewer is mistaken and his Motion to Strike is denied. Respondent's first "Reply" (ECF No. 12) is construed as an Opposition Response to Brewer's Motion for Partial Summary Judgment.

pending. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, Respondent's motion, construed as one seeking summary judgment, shall be granted and the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 shall be denied. Brewer's Motions are denied, except as to his request regarding sealing.

## I.  BACKGROUND

### A.  Brewer's Claims

Brewer, an inmate committed to the custody of the BOP, filed this petition challenging the validity of five disciplinary proceedings. ECF No. 1. Each of the disciplinary proceedings concerned Brewer's use of the telephone. Brewer claims his due process rights were violated because the disciplinary process was unconstitutional, and the acts taken against him violated his right to equal protection. *Id.*

Brewer contends that as to incident # 3395705 he was improperly charged with a Code 297 "Phone abuse" violation. In his view, that code violation applies when an inmate tries to circumvent the ability of staff to monitor a call or the number called, and in the facts alleged regarding this violation, an officer was able to monitor the call. ECF No. 1 at 7. Brewer believes he should have instead been charged with a Code 397 violation, which would not have involved the loss of good time credits ("GTC"). Additionally, Brewer claims that the Disciplinary Hearing Office ("DHO") report was "amended three months later" in violation of his rights. *Id.*

In incident #3491661 he was also charged with attempted phone abuse in violation of Code 297 for attempting to make a separate call during a private call with his lawyer. Brewer alleges there was no evidence to support the DHO's findings, the DHO report was missing, the violation was amended after his hearing, and the charge violated his right to counsel. ECF No. 1 at 7.

Brewer also challenges the guilty finding entered as to incident # 3502537, phone abuse in violation of Code 297. He states he has a witness to support his innocence. But, even if he were guilty of the charged conduct, his conduct, at most, should have been a violation of Code 397 because the facts contained in the incident report demonstrate that staff were in fact

---

In his Motion for Ruling and Sealing, Petitioner explains that his spouse is ill and attached a letter from his wife's medical provider regarding her illness. ECF No. 24. Brewer's request to seal that document, unopposed by Respondent, is granted. The Motion is denied in all other respects.

2

monitoring a recorded phone call. Brewer claims his rights to due process and equal protection were violated. *Id.*

As to incident #3519241, phone abuse in violation of Code 297, Brewer again maintains that the charge should have been violation of Code 397 because the conduct charged demonstrates that staff monitored the call and were able to list the phone number of the call made. *Id.* at 7. He also claims that the DHO report was amended after his appeal. *Id.* at 8. Brewer contends his rights to due process and equal protection were violated. *Id.* at 7. In his Motion for Partial Summary Judgment and Request for Expedited Ruling (ECF No. 10), Brewer asks that the Court expunge this incident, arguing that BOP failed to adhere to their own policy statement regarding the timeliness of processing of incident reports and that an affidavit attached to Respondent's dispositive motion is internally inconsistent. *Id.* at 1. Specifically, Brewer contends that Respondent states there were no errors in the incident report but also avers that the DHO was instructed to amend the DHO report to correct administrative errors. *Id.* For the reasons discussed below, any amendment to the DHO report and delay in processing Brewer's case did not amount to a violation of his rights and for that reason his Motion is denied.

Brewer states that his rights to due process and equal protection were also violated in regard to the guilty finding entered in incident # 3578421, another Code 297 violation. ECF No. 1 at 7-8. Brewer states that he has witness testimony, there is no evidence to support the code violation, and even if he did what was alleged in the charging documents, the violation should be of Code 397. *Id.* at 8.

Brewer seeks expungement of all of the incident reports, restoration of his GTC and removal of all sanctions. ECF No. 1 at 6. He seeks an expedited process because the incident reports are effecting his release and eligibility under the First Step Act. *Id.*

**B.    Respondent's Response**

Pursuant to BOP policy, all incident reports begin with the Unit Disciplinary Committee ("UDC"). *See* https://www.bop.gov/policy/progstat/5270_009.pdf (last visited Jan. 23, 2023) BOP Program Statement 5270.09 Inmate Discipline Program (July 8, 2011). The UDC is required to refer all 100 and 200 level disciplinary offenses to the DHO, while most 300 and 400 level offenses are handled at the UDC level. *Id.*; *see also* 28 C.F.R. § 541.7(a)(4). Respondent provides the following information regarding Brewer's disciplinary proceedings:

1.     **Claim 1-Incident Report 3395705**

On May 6, 2020, Brewer was incarcerated at FCI-Beckley in Beaver, West Virginia. ECF No. 7-2, at 3, ¶ 6 (Shaw Decl.), ECF No. 7-3 at 3, ¶¶ 5 and 6 (Harvey Decl.). On that date, an officer monitored a phone call placed on April 24, 2020, from phone station 3661 from an inmate account that was not Brewer's. ECF No. 7-3 at 3, ¶ 6. The officer recognized Brewer's voice by both its tone and the structure of his speech. *Id.* The officer also heard the inmate, and the woman to whom the inmate was speaking, refer several times to the inmate's child as "Michael". *Id.* The officer reviewed the CCTV Nice Vision camera system and identified Brewer as the inmate speaking on phone station 3661 at the time of the call and obtained a photograph of Brewer at the station. *Id.* The officer also obtained a copy of Brewer's Truview account (the BOP's phone system) which listed Michael Brewer as Brewer's child. *Id.*

That same day, Brewer was served with the incident report. *Id.*, ¶ 7 and ECF No. 7-3 at 7, (Incident Report). The following day, the UDC Chairperson referred the incident to the DHO for further proceedings and Brewer was served notice of the DHO hearing, acknowledged he understood his rights, and requested a staff member be present at the hearing. *Id.* at 4, ¶¶ 8, 9 and 10 and ECF No. 7-3 at 7, 8 (Notice of DHO Hearing), and 12 (Inmate Rights at DHO).

On May 13, 2020, DHO Harvey held the hearing. ECF No. 7-3 at 4, ¶ 11 and ECF No. 7-3 at 14-16, (DHO Report). Brewer's staff witness, Unit Manager Hedrick, testified that he met with Brewer before the hearing, but Brewer did not make any request of Hedrick regarding the hearing or incident. ECF No. 7-3 at 14. During the hearing, Brewer confirmed he received a copy of the written incident report, understood his rights, did not wish to call witnesses, and did not have any documentary evidence, including video footage. ECF No. 7-3 at 4, ¶ 12 and ECF No. 7-3 at 14. Brewer admitted that he "did use another inmates [sic] phone account to make a call. The report is true." *Id.* He questioned, however whether code level 297 was the accurate charge. ECF No. 7-3 at 4, ¶¶ 12, 16 and ECF No. 7-3 at 14. The DHO advised that Code 297 was the correct charge because BOP policy identified any behavior that circumvents the ability of staff to monitor the frequency of telephone use, content of the call, or the number called. *Id.* at 5, ¶ 16 and ECF No. 7-3 at 19 (Amended Report). The DHO also explained that using another inmate's phone identification impedes the staff's ability to monitor the frequency and use of Brewer's phone account. *Id.* After hearing all of the evidence, DHO Harvey determined Brewer committee the act as alleged and sanctioned him to 27 days loss of GCT and three months loss of

4

phone privileges. ECF No. 7-3 at 4, ¶ 13 and ECF No. 7-3 at 15. A copy of the discipline report was delivered to Brewer on June 12, 2020. ECF No. 7-3 at 5, ¶ 15 and ECF No. 7-3 at 16. The report was amended on August 14, 2020, to include reference to Brewer's questioning the propriety of the charge and the amended report was delivered to Brewer the same day. ECF No. 7-3 at 5, ¶¶ 16, 18 and ECF No. 7-3 at 18-20.

### 2. Claim 2-Incident 3491661

On April 7, 2021, at FCI Petersburg, Brewer was taken to a room for a phone call requested by his attorney. ECF No. 7-4 at 3, ¶ 6 (Callis Decl.) and ECF No. 7-4 at 14-16 (Incident Report). An officer, standing outside of the room, heard a phone dialing. *Id.* As this breached policy because Brewer was only allowed to speak to his attorney, the officer opened the door and saw Brewer, who was handcuffed behind his back, dialing the phone with his nose. *Id.* When the officer asked Brewer what he was doing, he responded that he was calling his wife to let her know the attorney was going to call her. *Id.* The officer advised Brewer he was only permitted to speak to his attorney. *Id.*

Brewer received a copy of incident report #3491661 on April 8, 2021. ECF No. 7-4 at 3, ¶ 7 and ECF No. 7-4 at 14. On April 11, 2021, the UDC referred the incident to the DHO for a hearing. ECF No. 7-4 at 3, ¶ 8 and ECF No. 7-4 at 15-16. Brewer explained that he was not dialing the phone with his nose, rather he was just close to the phone and his attorney called his wife after their call was completed. *Id.* On April 12, 2021, the incident report was amended because the time and date of the incident had been included in the heading of the paragraph rather than in the paragraph text of the incident. ECF No. 7-4 at 4, ¶ 9 ECF No. 7-4 at 18-21 (Amended Incident Report). The amended incident report was delivered to Brewer that day. ECF No. 7-4 at 4, ¶ 10. The following day, the UDC referred the matter to the DHO for further hearing and Brewer was provided with notice of the hearing and of his rights, which he acknowledged and requested to have a staff member present. ECF No. 7-4 at 4, ¶¶ 11 and 12; ECF No. 7-4 at 23 (Notice of Hearing); ECF No. 7-4 at 25 (Inmate Rights).

The hearing was held on April 26, 2021, before DHO Callis, who confirmed Brewer received a copy of the incident report, he did not wish to call witnesses other than his staff representative and did not wish to provide any documentary or video evidence. ECF No. 7-4 at 4, ¶ 14; ECF No. 7-4 at 27-30 (DHO Report). Additionally, Brewer stated that he understood that the delay in holding the hearing was caused by the amendment of the incident report and did

not express any concerns about the process. *Id.* Thereafter, Brewer declined to present his staff representative. *Id.* Callis recited the officer's written statement and Brewer stated, "I was sitting close to the phone. I never dialed the phone. I was talking to my attorneys about calling my wife." ECF No. 7-4 at 4, ¶ 14 and ECF No. 7-4 at 27. After weighing the evidence, including the reporting officer and Brewer's statements, Callis gave greater weight to the officer's statement and found Brewer attempted to violate Code 297 and sanctioned him to the loss of 27 GCT and 150 days loss of telephone privileges. ECF No. 7-4 at 4-5, ¶ 15; ECF No. 7-4 at 29. Brewer received a copy of the DHO report, which included a notice of his appeal rights, on May 24, 2021. ECF No. 7-4 at 4-5, ¶ 17; ECF No. 7-4 at 30.

### 3. Claim 3-Incident Report 3502537

On May 10, 2021, an officer at FCI-Petersburg monitored a call placed the previous day from the Special Housing Unit (SHU) where Brewer was housed, using an inmate's account that was not Brewer's. ECF No. 7-4 at 5, ¶ 19; ECF No. 7-4 at 32-34 (Incident Report). The officer knew immediately that the call was not placed by the inmate whose account was used because that inmate was not housed in the SHU. *Id.* The inmate stated that he did not recognize the telephone number called and had not given out his PIN. *Id.*

Brewer was given a copy of the incident report on May 11, 2021. *Id.* That same day, section 11 of the report (the description of the incident) was amended to include that the inmate whose account number was used could not use the fingerprint screen and had to use a PIN to place calls. ECF No. 7-4 at 6, 20 and ECF No. 7-4 at 36-38 (Amended Incident Report). The reporting officer searched the receiving telephone number and found that the number was only listed in the inmate whose account was used and Brewer's contact list. *Id.* Brewer had called that telephone number 22 times between January 1, 2020, and May 9, 2021, while the inmate whose account number was used had called the number only once—the monitored call. *Id.* Brewer was provided a copy of the amended incident report that day. *Id.* On May 17, 2021, the UDC referred the report to the DHO for a hearing. *Id.* Brewer denied using the phone as alleged arguing that since he was in the SHU it was impossible to use anyone else's access number and there was no evidence he had used the phone. *Id.*

On May 23, 2021, the report was again amended to reflect that Brewer was housed on the SHU in cell 225 at the time of call. ECF No. 7-4 at 6, ¶ 21; ECF No. 7-4 at 40-42 (Second Amended Incident Report). The reporting officer reviewed the NICE Vision CCTV system

6

which showed that at the time of the call, the portable SHU telephone was in cell 225. *Id.* Statements made by the inmate whose account was used regarding his not giving out his PIN were removed from the incident report. *Id.* Added to the report was the officer's statement that she heard Brewer during the call address a minor by name, as "son", and reference his age, which she corroborated were the name and age of Brewer's son. *Id.* Brewer received a copy of the amended report that day. ECF No. 7-4 at 6, ¶ 22. The UDC again referred the matter to DHO for a hearing. *Id.*, ¶ 23. Brewer again denied using the phone, expressing it was impossible to use anyone else's account number in the SHU. He also protested that there was no evidence he used the phone and that the amendment removed crucial evidence, such as that the inmate whose account was used did not share his PIN with anyone. ECF No. 7-4 at 6-7, ¶ 23; ECF No. 7-4 at 41. Brewer was provided notice of the hearing before the DHO which he acknowledged and requested to have a witness present. ECF No. 7-4 at 7, ¶¶ 24, 25; ECF No. 7-4 at 44 (Notice of Hearing) and 46 (Inmate Rights at Discipline Hearing).

The DHO hearing was held on June 8, 2021, before DHO Callis who confirmed Brewer received a copy of the incident report and did not wish to present a staff representative or any documentary or video evidence. ECF No. 7-4 at 7, ¶ 26; ECF No. 7-4 at 48-51 (DHO Report). As evidence, Brewer presented a written statement from an inmate who claimed, among other things, that he was Brewer's cellmate and Brewer did not attempt to use the phone but rather he used the phone that day. *Id.* Brewer stated "I am not guilty. I never made the call. I don't call my son [B----], I call him BJ. My witness used the phone, it was not me." *Id.* DHO Callis reviewed the statements of Brewer, the officer, and the witness, and gave greater weight to the officer's statement. *Id.* DHO Callis stated that she could not "ignore the fact the call was placed from the SHU where you were being housed." *Id.* The inmate whose account was used was not in the SHU at any time. Callis also took note of the frequency the number was called from Brewer's account. *Id.* Having determined Brewer committed the act as charged, he was sanctioned with the loss of 27 days GTC, six months loss of phone privileges, and six months loss of commissary privileges. *Id.* The report was delivered to Brewer on September 30, 2021. ECF No. 7-4 at 8, ¶ 29; ECF No. 7-4 at 51.

    **4.**  **Claim 4-Incident Report 3519241**

On June 29, 2021, at FCI-Petersburg, an officer monitored a phone call from the account of another inmate which was made on June 27, 2021. ECF No. 7-4 at 8-9 at ¶ 31; ECF No. 7-4

7

at 53-56 (Incident Report). The officer immediately recognized that the inmate whose account was used was not the inmate speaking. *Id.* During the call, the female speaker identified the caller as "Bryan." The inmate stated he had sent her two email requests for money for $60.00 and $100.00. *Id.* The officer found that the receiving telephone was listed in several inmate's accounts; however, only one account was listed to "Bryan" and that was Petitioner Bryan Brewer's account. *Id.* The officer also searched for emails the inmate referenced regarding money and found that Brewer did not send any emails requesting money in the amounts indicated, however another inmate had two outgoing emails on June 26 and 27, 2021 for those amounts, which indicated the owner of the account was not the sender of the email and directed the receiver of the message to deposit money in two different accounts. *Id.* In sum, the evidence indicated Brewer used one inmate's email to contact his wife and direct his wife to send money to himself and another inmate, without staff authorization and in order to circumvent the electronic mail and telephone monitoring process. *Id.* The officer also noted that Brewer had been restricted from using the phone until March 25, 2022. *Id.* The officer determined there was sufficient evidence to charge Brewer with violating Codes 296 (Mail Abuse-Electronic-Disrupt Monitoring), 297 (Phone Abuse-Disrupt Monitoring) and 328 (Mail Abuse-Electronic-Disrupt Monitoring). *Id.*; ECF No. 7-4 at 82 (Extension Request).

  Brewer was served with the incident report on June 29, 2021. ECF No. 7-4 at 9, ¶ 32. The UDC referred the matter to DHO on July 4, 2021, and that same day Brewer acknowledged receipt of the notice and that he understood his rights: he requested to have a staff representative and declined to present any witnesses. ECF No. 7-4 at 9, ¶¶ 33, 34, 35; ECF No. 7-4 at 55, 58 (Notice of DHO hearing), and 60 (Inmate Rights at Discipline Hearing). On July 27, 2021, the incident report was amended because the report writer erred in stating he had issued Brewer a prior incident report for the same prohibited act. ECF No. 7-4 at 9, ¶ 36 and ECF No. 7-4 at 62-64 (Amended Incident Report). Brewer received the amended report on July 28, 2021. ECF No. 7-4 at 9, ¶ 36; ECF No. 7-4 at 63. The UDC again referred the matter to the DHO on August 1, 2021, and again Brewer acknowledged receipt of the notice and his understanding of his rights, requested a staff representative, and declined to present witnesses. ECF No. 7-4 at 10, ¶¶ 37, 38; ECF No. 7-4 at 67 (Inmate Rights at Discipline Hearing), and 69 (Notice of Hearing).

  The DHO hearing was held on August 23, 2021, before DHO Callis who confirmed Brewer received a copy of the incident report, declined to present witnesses, and did not wish to

provide documentary or video evidence. ECF No. 7-4 at 10, ¶ 39; ECF No. 7-4 at 71-74 (DHO Report). Brewer acknowledged the delay in the hearing and did not express any concern regarding the delay and process. *Id.* Callis recited the reporting officer's statement written in the incident report. Brewer responded, "The incident report is lie. My wife was in the hospital. I never asked her for money. It could be anybody named B. Where is the video evidence, they don't have any? It's a lie." *Id.* Callis reviewed all of the evidence including the officer and Brewer's statements, the telephone system information, and the UDC extension memorandum which asked for more time to investigate the incident. ECF No. 7-4 at 10-11, ¶ 40; ECF No. 7-4 at 82 (Extension Request). Callis also advised Brewer that although he had not formally requested video evidence,[3] there was in fact no video evidence and so none could be presented. ECF No. 7-4 at 10, ¶ 39; ECF No. 7-4 at 71-74. Having reviewed all of the evidence, Callis gave greater weight to the officer's written account and determined Brewer violated Codes 296 and 297 and dismissed the Code 328 violation. Callis sanctioned Brewer to the loss of 54 days GCT (27 days for each code violation), five months loss of commissary privileges, seven months loss of visitation privileges, and nine months loss of telephone privileges. *Id.* Callis stated that Brewer's use of the telephone in an unauthorized manner posed a threat to the ability of staff to control the use of telephone and interfered with staff's ability to monitor calls. *Id.* Callis found that "Staff has the right to expect, when an inmate's account is in use it is the inmate on the telephone. By using another inmate PAC number, it impedes the institution's ability to properly monitor the call and know exactly which inmate is using the phone." ECF No. 7-4 at 11, ¶ 40; ECF No. 7-4 at 74. Brewer received a copy of the DHO report on September 30, 2021. ECF No. 7-4 at 11, ¶42; ECF No. 7-4 at 74.

Brewer filed an administrative remedy concerning this report and disciplinary hearing on October 5, 2021. ECF No. 7-4 at 11, ¶ 43. After review of the remedy, the Mid-Atlantic Regional Office requested the DHO report be amended to correct section four and to address Brewer's request for video evidence. ECF No. 7-4 at 11, ¶ 43. The report was amended on October 20, 2021, so that section four listed the acts Brewer was sanctioned for and included his request for video evidence. ECF No. 7-4 at 11, ¶ 44; ECF No. 7-4 at 76-80 (Amended DHO Report). The amended report stated there was no video evidence to review in the area where the

---

[3] Brewer contends that Callis did not review the video evidence he requested in violation of *Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019). ECF No. 17 at 4.

9

incident occurred. *Id.* Brewer was advised of his right to appeal the decision within 20 calendar days and was provided the amended report. ECF No. 7-4 at 11, ¶¶ 45, 46; ECF No. 7-4 at 80. Brewer filed an appeal to the Central Office, which was rejected because he did not submit the proper number of pages with his appeal. ECF No. 12-1 at 2, ¶ 5 (Shaw Decl.); ECF No. 12-1 at 26. He resubmitted his appeal on November 19, 2021. ECF No. 12-1 at 3, ¶ 6; ECF No. 12-1 at 27. The Central Office's response was due on January 18, 2022 but was not issued until February 23, 2022. *Id.*

### 5. Claim 5-Incident Report 3578421

While Brewer was incarcerated at FCI-Cumberland, an officer monitored a phone call placed on December 17, 2021 at 7:30 a.m., from the account of another inmate from phone station 4745. ECF No. 7-5 at 3, ¶ 6; ECF No. 7-5 at 7-9 (Incident Report). The officer immediately knew that the inmate speaking was not the inmate who initiated the call. *Id.* The officer reviewed the surveillance system and identified Brewer and the inmate whose account was used to make the call approach the phone station just before 7:30 a.m. *Id.* The officer saw the other inmate leave the area while Brewer remained in the area of the phone, which was out of view of the camera, for nine minutes. *Id.* Brewer's TruPhone account was not used during the call and Brewer was restricted from using the phone due to his previous 297 code violations. *Id.* Upon further investigation, the officer learned that the receiving phone number was added to Brewer's account on March 19, 2020 while he was incarcerated at another facility and was not added to the other inmate's account until November 17, 2021, while Brewer was housed at FCI-Cumberland. *Id.*

Brewer was served with incident report 3578421 on December 17, 2021. ECF No. 7-5 at 4, ¶ 7; ECF No. 7-5 at 7. The UDC referred the incident to the DHO on December 22, 2021, and Brewer received notice of the hearing that day. ECF No. 7-5 at 4, ¶¶ 8, 9; ECF No. 7-5 at 8; ECF No. 7-5 at 11 (Notice of DHO Hearing). Brewer acknowledged receipt of the notice and advice of rights and requested to have another inmate as a witness. ECF No. 7-4 at 4, ¶ 10; ECF No. 7-5 at 11; ECF No. 7-5 at 13 (Inmate Rights at Discipline Hearing).

The hearing began on December 30, 2021, before DHO Huff, but was postponed to January 19, 2022, so that Huff could review the video evidence. ECF No. 7-5 at 4, ¶ 11. When the hearing reconvened on the 19th, Huff reviewed Brewer's rights with him and confirmed he received a copy of the witness incident report and did not wish to provide any documentary

10

Case 1:22-cv-00489-LKG   Document 26   Filed 01/30/23   Page 11 of 17

evidence including video evidence. ECF No. 7-5 at 5, ¶ 12; ECF No. 7-5 at 15-19 (DHO Report). Huff recited the officer's written statement included in the incident report and Brewer stated, "I was not the one using inmate [X's] account. My cell is back there I went to my cell." Another inmate testified that Brewer did not use his account. *Id.*

DHO Huff reviewed the statements made by the reporting officer, Brewer, and the witness. Further, despite Brewer not asking for video evidence, the video evidence clearly showed what the reporting officer described. *Id.* Huff gave greater weight to the officer's written account and determined Brewer committed the act as charged. He was sanctioned to the loss of 27 days GTC and the loss of 120 days telephone privileges. *Id.* Brewer received a copy of the report, which included notice of his right to appeal, on February 15, 2022. ECF No. 7-5 at ¶¶ 14, 15; ECF No. 7-5 at 19.

## II.     STANDARD OF REVIEW

Respondent moves to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor. Such motions implicate the court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Brewer was placed on notice that Respondent sought summary judgment and responded in opposition. ECF No. 8. Accordingly, the Court treats the motion as one for summary judgment. *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005). Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses'

credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### III. ANALYSIS

Respondent contends that the Petition must be denied as Brewer failed to exhaust his administrative remedies as to incident reports 3395705 and 3578421 (Claims 1 and 5), he received all of the process he was due, and was not denied equal protection.

#### A. Exhaustion

Federal habeas relief is unavailable absent prior exhaustion of the claims asserted. The exhaustion requirement applies to petitions filed pursuant to 28 U.S.C. §2241. *See Francis v. Henderson*, 425 U.S. 536, 538 (1976) ("This Court has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power."); *see also Timms v. Johns*, 627 F. 3d 525, 531 (4th Cir. 2010) (applying exhaustion requirements to 2241 petition challenging civil commitment).

Where, as here, BOP inmates are aggrieved by conduct of BOP staff, they are required to seek a remedy for claims through the administrative remedy process in place in the BOP facilities. *See* 28 C.F.R. 542.10 *et seq*. The Administrative Remedy Procedure provides that if an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within 20 calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response, he may appeal to the Regional Director within 20 calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel, Washington, D.C., using the appropriate forms. The

inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. *See id.* An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See* 28 C.F.R. § 542.15(a). Where the inmate does not receive a response in the time allotted the inmate may consider the absence of a response a denial at that level. *See* 28 C.F.R. 542.18; *see also* BOP Program Statement 1330.18.

The appeal of a DHO decision is governed by Program Statement 5270.09 which provides:

> (i) Appeals. You may appeal the DHO's action(s) through the Administrative Remedy Program, 28 CFR Part 542, Subpart B. The reviewing official (Warden, Regional Director, or General Counsel) may approve, modify, reverse, or send back with directions, including order a rehearing, any action of the UDC or DHO, but may not increase a valid sanction. The initial reviewing official for the UDC is the Warden. The decision of the DHO is final and subject to review only by the Regional Director to ensure conformity with the discipline policy and by appeal through the Administrative Remedy program. The DHO ensures the inmate is notified that any appeal must be made within the time frames in the Administrative Remedy Procedures. The Warden may also review DO hearings to the extent he or she considers necessary to ensure substantial compliance with the provisions of the discipline policy. Also the DHO may receive informal complaints about the procedure and correct mistakes locally.

To excuse a failure to exhaust remedies, a Petitioner must demonstrate cause and prejudice. *See Timm*, 627 F.3d at 531; *McClung v. Shearin*, 90 F.App'x 444, 445 (4th Cir. 2004).

In his opposition to Respondent's motion, Brewer contends that exhaustion of administrative remedies is a futility, and the Court should therefore excuse any failure to exhaust. ECF No. 17 at 2. But, Brewer does not explain what efforts he made to exhaust his remedies as to Claims 1 and 5, and why or how he was not able to do so, or what other factual information supports his conclusory statement that it would be futile to attempt to exhaust remedies. Similarly, Brewer contends that Respondent's arguments regarding exhaustion are false, but he does not explain how. The following facts remain undisputed.

Brewer filed an administrative remedy with the Mid-Atlantic Regional (?) Office (MARO) as to incident report #3395705 on June 26, 2020. ECF No. 7-2 at 4, ¶ 12(a); ECF No. 7-2 at 17. MARO denied the administrative remedy on August 18, 2020. *Id.* Thereafter, Brewer

failed to file an appeal to the Central Office as required. *Id.* As such, he did not administratively exhaust his remedies as to incident report #3395705.

Brewer filed an administrative remedy with MARO regarding incident report #3578421 on February 10, 2022. ECF No. 7-2 at 4, ¶12(b); ECF No. 7-2 at 37. He filed this petition on March 1, 2022. ECF No. 1. MARO denied Brewer's remedy on March 4, 2022, and Brewer appealed the denial to the Central Office on March 31, 2002. ECF No. 7-2 at 5, ¶ 12(b). The Central Office's response was not due until May 30, 2022, after Respondent filed its Motion responsive to the Petition. *Id.*

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). This Court has consistently recognized that administrative remedies must be completed prior to filing suit in this Court. *Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015); *see also Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010); *Kaufman v. Baynard*, CIV.A. 1:10-0071, 2012 WL 844480 (S.D.W. Va. Feb. 3, 2012) *report and recommendation adopted*, CIV.A. 1:10-0071, 2012 WL 844408 (S.D.W. Va. Mar. 12, 2012); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015). As such, Brewer failed to exhaust his administrative remedies as to report #3578421 before filing this case and his claims regarding this report are unexhausted and must be dismissed.

Further, Brewer fails to show cause and prejudice for his failure to exhaust his remedies as to the foregoing two claims. The record shows he is familiar with administrative remedy process and that he exhausted his remedies as to three of the five incident reports complained of, demonstrating that exhaustion was not a futility.

Nevertheless, for the reasons that follow, even if the Court excused Brewer's failure to exhaust his remedies as to these two incidents, the record reflects that neither his right to equal protection nor due process was violated in any of the five disciplinary proceedings charging him with misuse of the telephone.

**B.     Equal Protection**

Brewer contends that he was "treated differently than the BOP manual states, PS5270.09 inmate discipline." ECF No. 1 at 8. The Equal Protection Clause provides that "[n]o state shall. . .deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV., § 1. The Equal Protection Clause generally requires the government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). The Supreme Court applied the Equal Protection Clause against the federal government in *Bolling v. Sharpe*, 347 U.S. 497 (1954). Where a classification violates the Equal Protection Clause of the Fourteenth Amendment, it also violates the Fifth Amendment's Due Process Clause. *See Johnson v. Robison*, 415 U.S. 361, 364 n. 4 (1974). To state a claim under the Equal Protection Clause, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Brewer has failed to allege that he was treated differently than similarly situated persons and that any unequal treatment was the result of intentional or purposeful discrimination. As such, Brewer's Equal Protection claims fail.

### C.  Due Process

Brewer's claim that his right to due process was violated in each disciplinary proceeding also fails. Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due to a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-66, 592.

There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*,

15

373 F.3d 501, 504-05 (4th Cir. 2004). Inmates retain a "qualified due process right to obtain and present prison video evidence surveillance," unless the "government establishes that providing the inmate with access to such evidence would be 'unduly hazardous to institutional safety or correctional goals." *Lennear v. Wilson*, 937 F. 3d 257, 269-70 (4th Cir. 2019). Documentary evidence requests may be considered on an "individual basis." *Id.* It is a violation of due process when a hearing officer refuses to consider video evidence: despite an inmate's request (*Howard v. U.S. Bureau of Prison*, 487 F. 3d 808, 811 (10th Cir. 2007); when the officer considers the evidence "needlessly cumulative," (*id.*); and when the officer refuses to review the video evidence for no reason (*Learner*, 937 F.3d at 272).

As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322, n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *Tyler v. Hooks*, 945 F. 3d 159, 171 (4th Cir. 2019) ("the 'some evidence' standard is extremely broad in scope and presents a very low burden for prison officials to meet.").

Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945 F3d at 171-72. As long as there is some evidence in the record to support factual findings in a disciplinary proceeding, a federal court will not review the accuracy of those findings.

Here, Brewer received the incident reports prior to the DHO hearings and the reports detailed the charges against him. To the extent any of the incident reports were amended, Brewer received the amendments prior to the hearing and "there is no prohibition in [28 C.F.R. §] 541.8 on preparing a revised or rewritten incident report" so long as "Petitioner had adequate notice of the revisions prior to the hearing." *Rentas v. United States*, No. 1:15-CV-195, 2016 WL 4045457, at *6 (N.D. W. Va. June 30, 2016) citing *Carrut v. Fondren*, 2009 WL 825775, at *5 (D. Minn. 2009) (stating that the rewritten incident report that provided greater detail on charges did not deny the petitioner due process but rather provided the petitioner adequate notice and the opportunity to defend against the charges); *Scott v. Martinez*, 2009 WL 79041 *4 (M.D. Pa. 2009) ("Nothing in the policy of the BOP prohibits it from correcting an error or seeking

more information with regard to an incident report that is written, and Scott was not prejudiced by the rewritten incident report, as it did not impair his ability to present a full defense throughout the disciplinary process.").

Further, Brewer attended each hearing and was permitted to present witnesses and evidence, although in general he declined to do so. On each occasion, the impartial DHO considered the statement of the reporting officer, Brewer's statements, any witness testimony, and where available, video evidence, and based on the weight of the evidence presented found Brewer guilty of the rule violations. In regard to the alleged failure to provide video evidence, the failure to provide video evidence that does not exist is not a due process violation. *See Lennear*, 937 F.3d at 262. On each occasion, the DHO's decision was based on some evidence and after each hearing, Brewer received a copy of the DHO's written decision. In short, as to each rule violation, Brewer received all of the procedural and substantive process he was due.

## IV. **CONCLUSION**

Having found no basis for the claims asserted, Respondent's Motion to Dismiss or for Summary Judgment (ECF No. 7), construed as a Motion for Summary Judgment, shall be granted by separate Order which follows. Brewer's Motions for Partial Summary Judgment (ECF No. 10) and to Strike (ECF No. 21) are denied. Brewer's Motion for Ruling and Sealing (ECF No. 23) is granted in that the attachment to the Motion (ECF No. 24) is sealed and denied in all other respects. The Petition for Writ of Habeas Corpus shall be denied.

Lydia K. Griggsby
United States District Judge